UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

DAVID SOBEL,

                       Plaintiff,

      v.

MAJOR ENERGY SERVICES, LLC, and
SPARK ENERGY, LLC,

                       Defendants.

**ORDER**

19 Civ. 8290 (PGG) (DCF)

PAUL G. GARDEPHE, U.S.D.J.:

        In this diversity action, Plaintiff David Sobel sues Defendants Major Energy Services, LLC ("Major Energy") and Spark Energy, LLC for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (Cmplt. (Dkt. No. 1-1)) Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Def. Br. (Dkt. No. 34)) On February 26, 2020, this Court referred Defendants' motion to Magistrate Judge Debra Freeman for a Report & Recommendation ("R&R"). (Dkt. No. 16) On July 31, 2020, Judge Freeman issued an R&R in which she recommends that Defendants' motion be denied in its entirety. (R&R (Dkt. No. 32)) Defendants object to the R&R and argue that all of Sobel's claims should be dismissed. (Dkt. No. 32) For the reasons set forth below, the Court will adopt the R&R in its entirety.

## BACKGROUND

**I.     FACTS[1]**

In a January 30, 2017 letter, Nathan Kroeker, Spark Energy's President and CEO, offered Sobel a position as Chief Financial Officer of Major Energy – a Spark Energy subsidiary and "retail energy supplier." (Cmplt. (Dkt. No. 1-1) ¶¶ 6-7; Jan. 30, 2017 Letter Agreement (Dkt. No. 1-1) at 12) The January 30, 2017 letter sets forth the terms and conditions of Sobel's employment, including his eligibility for Spark Energy's bonus program. (Jan. 30, 2017 Ltr. (Dkt. No. 1-1) at 12-13; Cmplt. (Dkt. No. 1-1) ¶ 8) In relevant part, the letter states:

> **Bonus:** You will be eligible to participate in Spark [Energy's] annual bonus program. Your target bonus will be 50% of your base salary. This bonus is discretionary and you must be an active employee at the time of any payout to receive payment.

(Jan. 30, 2017 Letter Agreement (Dkt. No. 1-1) at 12) On February 2, 2017, Sobel signed the letter agreement and accepted the terms therein.[2] (Id. at 13)

In March 2019, Kroeker advised Major Energy's President, Mark Wiederman, that Sobel would receive an annual bonus. (Cmplt. (Dkt. No. 1-1) ¶ 9) Wiederman shared this information with Sobel, telling him that "Defendants had exercised their discretion and [Plaintiff] would receive 80% of his target bonus," which would amount to approximately $104,800.[3] (Id. ¶ 10) Later that month, while Sobel was still an "active employee of Major

---

[1] The parties have not objected to Judge Freeman's recitation of the alleged facts. Accordingly, this Court adopts her account of the alleged facts in full. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true.").
[2] The signed letter – which the parties agree constitutes a valid contract (Def. Br. (Dkt. No. 8) at 1; Cmplt. (Dkt. No. 1-1) ¶ 8) – forms the basis for Sobel's breach of contract claim. (Cmplt. (Dkt. No. 1-1) ¶¶ 8, 19-23)
[3] "[T]he target bonus was 50% of Sobel's salary. Sobel's salary was $262,000. 50% of that salary is $131,000. 80% of the $131,000 target is $104,000." (Cmplt. (Dkt. No. 1-1) ¶ 10)

2

[Energy]," Kroeker "verbally confirmed to [Plaintiff]" that "he had earned the discretionary bonus and would be receiving the approximately $104,800 bonus." (Id. ¶¶ 11-12)

On April 8, 2019, Kroeker informed Sobel that he had instructed "Spark to release [the] bonus to him." (Id. ¶ 13) On April 10, 2019, Sobel asked Spark Energy's human resources department "about the whereabouts of his bonus check." (Id. ¶ 15) In response, a Spark Energy human resources department employee provided Sobel with a FedEx tracking number for a parcel that "presumably contained his bonus check." (Id.)

On April 16, 2019, Sobel's employment at Major Energy was terminated. (Id. ¶ 17) Sobel never received a bonus from Major Energy. (Id. ¶ 18)

## II.     PROCEDURAL HISTORY

The Complaint was filed on August 15, 2019, in Supreme Court of the State of New York, Rockland County. (Cmplt. (Dkt. No. 1-1)) Defendants removed the action on September 5, 2019. (Notice of Removal (Dkt. No. Dkt. No.1)) The Complaint asserts claims for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (Id.)

On September 12, 2019, Defendants moved to dismiss. (Def. Br. (Dkt. No. 8)) As to Sobel's breach of contract claim, Defendants argue that their failure to pay Sobel the bonus does not constitute a breach because – under the terms of the January 30, 2017 letter contract – the payment of any bonus was "discretionary" and Sobel was only eligible for the bonus if he was an "active employee at the time of any payout." (Id. at 2-4) As to Sobel's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing, Defendants argue that these claims must be dismissed as duplicative of Sobel's contract claim. (Id. at 1, 4-6)

3

On February 26, 2020, this Court referred Defendants' motion to Judge Freeman for an R&R.[4]  (Dkt. No. 16)  In her July 31, 2020 R&R, Judge Freeman recommends that Defendants' motion be denied in its entirety.  (R&R (Dkt. No. 29))  On August 14, 2020, Defendants objected to the R&R, arguing that all of Plaintiff's claims should be dismissed.  (Def. Obj. (Dkt. No. 32))

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Review of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003

---

[4] This case was originally assigned to the Hon. Deborah Batts.  It was reassigned to this Court on February 20, 2020.

WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

For portions of the R&R to which no timely objection is made, a Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

### B. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation

5

of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

"On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)).

## II.    ANALYSIS

### A.    Breach of Contract

As the R&R notes, a plaintiff claiming a breach of contract under New York law[5] "must allege '(1) the existence of an agreement; (2) adequate performance of the contract by the

---

[5] The parties agree that New York law applies. (R&R (Dkt. No. 29) at 9 n.4 (citing Def. Br. (Dkt. No. 8) at 3-7 and Pltf. Opp. (Dkt. No. 13) at 2-7) see Metro. Transp. Auth. v. James River Ins. Co., No. 19-CV-3266 (RA), 2019 WL 5212286, at *2 (S.D.N.Y. Oct. 16, 2019) ("The

6

plaintiff; (3) breach of contract by the defendant; and (4) damages.'"  (R&R (Dkt. No. 29) at 9-10 (quoting Swan Media Grp., Inc. v. Staub, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)))

Here, Defendants challenge only the third element.  (R&R (Dkt. No. 29) at 10)  According to Defendants, the Complaint's allegations do not state a plausible claim for breach of contract, because the January 30, 2017 letter agreement provides that (1) Sobel will receive a bonus only if he is an "active employee at the time of any payout," and (2) payment of any bonus is "discretionary."  (Id. at 10 (citing Def. Br. (Dkt. No. 9) at 2-3; Jan. 30, 2017 Letter Agreement (Dkt. No. 1-1) at 12-13))  The Court addresses each of these arguments in turn.

### 1. **"Active Employee at the Time of Any Payout" Requirement**

Defendants construe the phrase "at the time of any payout" to mean the time when Sobel "received" the bonus payment.  (Id. at 11 ("Defendants are apparently taking the position that 'the time of any payout' should be read to mean the time when a payment is received. . . ."); Def. Obj. (Dkt. No. 32) at 4 (arguing that the "term 'at the time of payout' . . . mean[s] when the payment is received"))  Because Sobel's employment was terminated before he received any bonus payment, Defendants argue that Sobel has no right to a bonus.  (Def. Obj. (Dkt. No. 32) at 5 ("Plaintiff was not entitled to a bonus because he was terminated . . . prior to receiving any payment; thus there could be no breach of contract."); see also Def. Br. (Dkt. No. 15) at 7 (arguing that Sobel was not eligible for a bonus because he "was terminated before any such [bonus] payment" was made))

Judge Freeman found, however, that the phrase "at the time of any payout" was ambiguous and could mean "the time when any funds earmarked for the payment are

---

parties do not dispute that New York law governs the claims at issue in this case, and the Court therefore applies New York law. . . .").

electronically released . . . from a corporate account, or the time when any bonus check is signed, or the time when such a check is placed in the mail by a representative of [Defendants], or the time when the bonus payment is received by the intended recipient."[6]  (R&R (Dkt. No. 29) at 11)  The Complaint pleads facts alleging that the presidents of Spark Energy and Major Energy had approved Sobel's bonus, and that his bonus check was in the process of being delivered via FedEx, while Sobel was still an "active employee."  (Id. at 12; Cmplt. (Dkt. No. 1-1) ¶¶ 9, 11-13, 15-17)  Judge Freeman found that these allegations are sufficient to plausibly allege that the bonus "payout" occurred prior to the termination of Sobel's employment (R&R (Dkt. No. 29) at 11), and that accordingly dismissal of Plaintiff's breach claim would be improper.  (Id. at 11-12 ("[A]s 'reasonable minds could differ' as to what 'the time of any payout' means[,] . . . Plaintiff's contract claim should not be dismissed based on Defendants' assumed meaning of this key contractual language alone.") (quoting Van Wagner Adv. Corp. v. S&M Enters., 67 N.Y.2d 186, 191 (1986)) (citing Orchard Hill Master Fund Ltd. v. SBA Communications Corp., 830 F.3d 152, 156 (2d Cir. 2016) ("At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous."); Orlander v. Staples, Inc., 802 F.3d 289, 295 (2d Cir. 2015) ("[I]f a contract is ambiguous as applied to the facts that furnish the basis of the suit, a court has insufficient data to dismiss a complaint for failure to state a claim" (internal quotation marks and citation omitted)))

       This Court sees no error in Judge Freeman's analysis, and finds Defendants' objections unpersuasive.  Defendants argue that "[t]he term 'at the time of payout' is frequently inserted in employment agreements and is commonly understood to mean when the payment is

---

[6] "[A]t the time of any payout" could also refer to the time at which Spark Energy issues bonuses on a company-wide basis.

received."  (Def. Obj. (Dkt. No. 4) at 4)  But Defendants cite no case law – or any other authority – for this proposition.  In short, Defendants have not demonstrated that their interpretation of the letter agreement is the only reasonable interpretation.  See Faust Harrison Pianos Corp. v. Allegro Pianos, LLC, No. 09 CIV. 6707 ER, 2013 WL 2292050, at *8 (S.D.N.Y. May 24, 2013) ("The moving party has the burden of establishing that the contract's language is not susceptible to at least two fairly reasonable meanings."); Four Star Capital Corp. v. Nynex Corp., No. 93 CIV. 3706 (LMM), 1993 WL 350016, at *4 (S.D.N.Y. Sept. 9, 1993) ("'If ambiguity is found, it must be resolved – as well as inferences drawn – against the moving party. . . .'") (quoting Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)).

Defendants' interpretation of the contractual language could also lead to absurd results.  For example, given Defendants' interpretation that an employee is eligible to "receive" a bonus payment only if he or she is an active employee when he or she "receive[s]" the bonus payment (Def. Obj. (Dkt. No. 32) at 4), an active employee whose bonus check was lost in the mail would lose his or her right to a bonus if terminated before the lost bonus check was replaced.  Defendants could also delay payment of the "annual bonus" to an active employee indefinitely, fire the employee, and then claim that the terminated employee had no right to a bonus because the employee did not "receive" the bonus payment while serving as an active employee.  A contractual interpretation that leads to absurd results should be avoided.  See Spanski Enterprises, Inc. v. Telewizja Polska S.A., No. 19 Civ. 1619 (PGG), 2019 WL 6498257, at *5 (S.D.N.Y. Dec. 2, 2019) ("[C]ourts 'must avoid interpreting a contract in a manner that would be absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'") (quoting Landmark Ventures, Inc. v. Wave Sys. Corp., No. 11 Civ. 8440, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012)).

Finally, Defendants fault Judge Freeman for <u>sua sponte</u> analyzing whether the phrase "at the time of payout" is ambiguous. (Def. Obj. (Dkt. No. 4) at 3 ("[T]he topic of ambiguity was not raised by Plaintiff in his Complaint or opposition brief; rather, the Court <u>sua sponte</u> addressed this topic in its R&R.")) "'At the motion to dismiss stage,'" however, "'a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous.'" <u>Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.</u>, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *5 (S.D.N.Y. June 8, 2020) (quoting <u>Orchard Hill</u>, 830 F.3d at 156). In moving to dismiss the Complaint, Defendants placed the question of ambiguity squarely before Judge Freeman, and it was entirely proper for her to address the issue.

In sum, the phrase "active employee at the time of any payout" is ambiguous, and Defendants' interpretation of this language is not the only reasonable interpretation.

### 2. **"Discretionary" Nature of Bonus**

Defendants also argue that Sobel's breach of contract claim fails because "'an employee has no enforceable right to a bonus under a discretionary bonus plan.'" (Def. Br. (Dkt. No. 8) at 3 (quoting <u>Barber v. Deutsche Bank Sec., Inc.</u>, 938 N.Y.S.2d 225 (N.Y. Co. Sup. Ct. 2011), <u>aff'd</u>, 103 A.D.3d 512 (1st Dep't 2013)))

The R&R addresses the "discretionary" issue as follows:

> Defendants have cited to several cases that supposedly support the proposition that a breach-of-contract claim must be dismissed where it is based on an employer's failure to pay an employee a discretionary bonus. . . . A close reading of Defendants' cited authority, however, reflects that those cases are distinguishable from the situation presented here, either because the relevant payment date was not in dispute, or because the employee did not allege that the time of payment had occurred prior to his termination, or because the employee was merely challenging the employer's discretionary authority to determine the amount of the bonus that was awarded.

10

(R&R (Dkt. No. 29) at 13-14 (footnotes omitted))  "[A]ffording Plaintiff's allegations the benefit of every favorable inference," Judge Freeman concludes that "Defendants have not demonstrated that Plaintiff's breach-of-contract claim is insufficiently pleaded."  (Id. at 14)

In their objections, Defendants contend that the discretionary nature of the bonus is fatal to Sobel's contract claim, because "'an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus.'"  (Def. Obj. (Dkt. No. 32) at 6 (quoting O'Grady v. BlueCrest Capital Mgmt., LLP, 111 F. Supp. 3d 494, 501 (S.D.N.Y. 2015)))  Defendants are correct that, "[u]nder New York law, an employee cannot recover for an employer's failure to pay a bonus where the employer has absolute discretion over the bonus decision."  Longhi v. Lombard Risk Sys., Inc., No. 18-CV-8077 (VSB), 2019 WL 4805735, at *5 (S.D.N.Y. Sept. 30, 2019) (citing Namad v. Salomon Inc., 74 N.Y.2d 751, 752-53 (1989)).  "However, the employer's absolute discretion must be stated unambiguously in the contractual documents to justify dismissal of a bonus claim."  (Id. (citing Ashmore v. CGI Grp. Inc., No. 11 Civ. 8611 (LBS), 2012 WL 2148899, at *8-9 (S.D.N.Y. June 12, 2012)))

Although the letter agreement provides that the Spark Energy annual "bonus is discretionary" (Jan. 30, 2017 Letter Agreement (Dkt. No. 1-1) at 12), Plaintiff's factual allegations take this case outside the routine dispute about a discretionary bonus.  Plaintiff alleges that Defendants told him that they had exercised their discretion under the January 30, 2017 letter agreement to pay him an annual bonus.  (Cmplt. (Dkt. No. 1-1) ¶ 9)  They also told him the amount of the bonus payment that he would receive and that the bonus payment had been sent to him by Federal Express.  (Id. ¶ 9-11, 13, 15)

11

In sum, the Complaint plausibly alleges that Defendants had exercised their discretion to award Plaintiff an annual bonus of $104,800.  Discovery will presumably reveal the explanation for why Plaintiff did not receive the bonus payment that purportedly had been sent to him by Federal Express.

Drawing "every reasonable inference" in Plaintiff's favor at this stage of the proceedings, the Court concludes – under the unusual circumstances of this case[7] – that the "discretionary" nature of the bonus program does not necessarily preclude Sobel's breach of contract claim.  See Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013) (in ruling on a motion to dismiss, a court must "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor").

B.  **Unjust Enrichment**

As the R&R notes, "New York law recognizes quasi-contract claims, including a claim for unjust enrichment."  (R&R (Dkt. No. 29) at 14 (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 905 (2d Cir. 1997))  "To state a claim for unjust enrichment, a plaintiff must allege (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  (Id. (citing Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)))

As Judge Freeman acknowledges, "'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery' for a party's unjust-enrichment claim based on 'events arising out of the same subject matter.'"  (Id. at 14-15 (quoting Valley Juice Ltd., Inc. v. Evian Waters of France, Inc., 87 F.3d 604, 610 (2d Cir. 1996))

---

[7] None of the cases cited by Defendants (Def. Obj. (Dkt. No. 32) at 5-6) involve comparable facts.

12

"New York courts, however, allow '[a] plaintiff to defer making an election of remedies and damages in cases where there is a dispute over the existence, scope, or enforceability of the putative contract.'"  (Id. at 15 (quoting Chase v. American Stock Exchange L.L.C., No. 03cv1304, 2003 WL 23281592, at *1 (S.D.N.Y. Mar. 14, 2003)))

Judge Freeman observes that the record is unclear as to whether Sobel's employment agreement was with Major Energy, Spark Energy, or both.  (Id. at 15-16 ("[T]his Court independently observes that the Employment Contract (which is integral to the Complaint) was in the form of a letter addressed to Plaintiff, confirming that he was being employed as the Chief Financial Officer of Major [Energy], and it was signed by Kroeker, as 'President and CEO, Spark Energy on Behalf of Major Energy.' . . . On the other hand, the letter was written on Spark [Energy's] letterhead; it referred to Plaintiff's 'new employment arrangement with Spark Energy'; and, as particularly relevant here, it entitled Plaintiff to participate in 'Spark [Energy's] annual bonus program.'") (quoting Jan. 30, 2017 Ltr. (Dkt. No. 1-1) at 12-13) (emphasis omitted))  To the extent that at least one defendant might not be a signatory to the letter agreement, Judge Freeman concludes that an unjust enrichment claim could proceed against that entity, and therefore dismissal of Plaintiff's unjust enrichment claim would be premature.  (Id. at 16)

Defendants object to this finding, arguing that "courts have consistently held that 'claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract.'"  (Def. Obj. (Dkt. No. 32) at 8 (quoting LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 165-66 (E.D.N.Y. 2012)))

13

The Court agrees with Judge Freeman that – to the extent that Sobel is bringing an unjust enrichment claim against a non-signatory to the letter agreement – the letter agreement does not govern his right to payment as to the non-signatory.  See Hughes v. BCI Intern. Holdings, Inc., 452 F. Supp. 2d 290, 315 (S.D.N.Y. 2006) ("[P]laintiffs' written agreement with [contracting defendant] does not, as a matter of law, bar a claim for unjust enrichment against non-parties to that agreement whose alleged conduct falls outside of the subject matter of the agreement.").  Discovery will clarify what Defendants are parties to the agreement, and it would be premature to dismiss the unjust enrichment claim without a full record concerning this issue.  See Gladsky v. Frank Scobbo Contractors, Inc., No. 16-CV-2365 (DRH) (AYS), 2017 WL 3731323, at *5 (E.D.N.Y. Aug. 29, 2017) ("Given that is its unclear as to which defendant may have entered into the . . . alleged contract . . . , it would be premature to dismiss the [quasi-contract] claim at this time.").

There is also a "dispute over the . . . scope[] or enforceability of the putative contract," at least with respect to Sobel's bonus.  Chase, 2003 WL 23281592, at *1.  Indeed, Defendants contend that Sobel has "'no enforceable right to a bonus under [Defendants'] discretionary bonus plan.'"  (Def. Br. (Dkt. No. 8) at 3 (quoting Barber, 938 N.Y.S.2d at 225))  Because Defendants contend that Sobel has no contractual right to a bonus, the Court will not at this stage of the proceedings dismiss his unjust enrichment claim as duplicative of his breach of contract claim.  See Aquavit Pharm., Inc. v. U-Bio Med, Inc., No. 19-CV-3351 (VEC), 2020 WL 4504737, at *3 (S.D.N.Y. Aug. 5, 2020) ("[I]t would be premature to preclude Defendants from pursuing unjust enrichment and contract claims in the alternative."); P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co., No. 18-CV-9232 (JPO), 2019 WL 4805862, at *5 (S.D.N.Y. Sept. 30, 2019) ("[E]ven if New York law precludes a plaintiff from

simultaneous recovery under both contract and quasi-contract theories, it does not forbid pleading both claims in the alternative. . . . Moreover, the New York restriction applies 'only where the scope of the contract clearly covers the dispute between the parties.'") (quoting Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005)).

For these reasons, Defendants' motion to dismiss Plaintiff's unjust enrichment claim will be denied.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

As Judge Freeman notes, "[u]nder New York law, every contract includes an implied covenant of good faith and fair dealing, and '[e]ncompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" (R&R (Dkt. No. 29) at 17 (quoting Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995))) "'To state a cause of action for breach of the implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" (Id. (quoting Dweck Law Firm, L.L.P. v. Mann, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004)) "'While independent obligations beyond those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms.'" (Id. (quoting JPMorgan Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116 (PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009)))

"As a general matter, a claim for breach of this implied covenant cannot be maintained, where 'the alleged breach is intrinsically tied to the damages allegedly resulting

from a breach of contract' and is thus duplicative." (Id. (quoting The Hawthorne Grp., LLC v. RRE Ventures, 776 N.Y.S.2d 273, 276 (1st Dep't 2004)) (citing Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 894 N.Y.S.2d 47, 49-50 (1st Dep't 2010) (noting that a claim of breach of the covenant of good faith and fair dealing should be "dismissed as duplicative of the breach-of-contract claim, [when] both claims arise from the same facts . . . and seek the identical damages for each alleged breach")))

Judge Freeman acknowledges that "the damages [Sobel] seeks on his implied-covenant claim are 'intrinsically tied' to the damages allegedly resulting from his contract claim." (R&R (Dkt. No. 29) at 19 (quoting RRE Ventures, 776 N.Y.S.2d at 276)) For both claims, Sobel seeks $104,800 – the amount of his expected bonus. (Cmplt. (Dkt. No. 1-1) ¶¶ 23, 33) Judge Freeman finds, however, that "the factual allegations underlying the two claims are not actually identical," reasoning as follows:

> For his contract claim, Plaintiff simply alleges that Defendants failed to perform the Employment Contract (see Compl. ¶ 22), suggesting that he was contractually entitled to the bonus that was not provided. In contrast, for his implied-covenant claim, Plaintiff challenges Defendants' alleged "actions in not paying [him] the discretionary bonus that they told him that he had earned and would be paid." (Id. ¶ 32.) Reading the latter allegation in the light most favorable to him, Plaintiff plausibly asserts that, having already made the discretionary decision to pay his bonus, Defendants then acted arbitrarily or in bad faith to effectuate a de facto reversal of that decision.

(R&R (Dkt. No. 29) at 19)

Because "the underlying factual allegations supporting the claims are different," Judge Freeman concludes that Sobel's "claim for breach of the implied covenant of good faith and fair dealing is sufficiently distinct from [his] breach-of-contract claim that it should not be dismissed as duplicative." (Id. at 18, 21)

16

Defendants object to Judge Freeman's finding, arguing that "[b]ecause the relief sought by Plaintiff for the breach of covenant of good faith is identical to the relief sought by him for the breach of contract claim, his claim pursuant to the implied covenant must be dismissed as duplicative."  (Def. Obj. (Dkt. No. 32) at 10)

The Court finds no error in Judge Freeman's analysis.  The touchstone for whether claims are duplicative is whether they rely on the same factual allegations.  See Cruz v. Fxdirectdealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."); Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) ("[W]hen a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim.").  As Judge Freeman points out, the facts underlying Sobel's breach of contract and good faith and fair dealing claims differ:  Sobel's allegations underlying his contract claim suggest that he was contractually entitled to a bonus under the letter agreement, whereas the allegations underlying his good faith and fair dealing claim suggest that Defendants acted in bad faith to subvert the contract by reversing their prior decision to pay him the bonus.  (Cmplt. (Dkt. No. 1-1) ¶¶ 22, 32)

Sobel seeks $104,800 in damages in connection with his contract and good faith and fair dealing claims.  (Id. ¶¶ 23, 33)  While double recovery is precluded, see Ge Dandong v. Pinnacle Performance Ltd., 966 F. Supp. 2d 374, 390 (S.D.N.Y. 2013) ("Plaintiffs cannot obtain double recovery for the same injury; but that prospect can be addressed at a later stage of the case, if necessary."); Gladsky, 2017 WL 3731323, at *5 ("[T]o the extent that Plaintiff prevails

on the breach of contract claim he may not receive a double recovery for a [quasi-contract claim]."), it is not improper for him to plead both claims under the circumstances of this case. See A.T. Kearney, Inc. v. Glob. Crossing Telecommunications, Inc., No. 11 CIV. 5035 PAC, 2013 WL 4838819, at *3 (S.D.N.Y. Sept. 11, 2013) ("Although [plaintiff] cannot recover twice for the same actions by [defendant], it 'is not precluded from proceeding on both breach of contract and quasi-contract theories.'") (quoting Curtis Props. Corp. v. Greif Cos., 653 N.Y.S.2d 569, 571 (1st Dep't1997)); P&G Auditors, 2019 WL 4805862, at *5 ("'[B]ecause it is difficult to determine the validity or scope of the contract at the pleading stage, courts routinely reject arguments against simultaneous quasi-contract claims as premature.'") (quoting Vertex Const. Corp. v. T.F.J. Fitness L.L.C., No. 10 Civ. 683, 2011 WL 5884209, at *4 (E.D.N.Y. Nov. 23, 2011) (alterations omitted); Citi Mgmt. Grp., Ltd. v. Highbridge House Ogden, LLC, 45 A.D.3d 487 (1st Dep't 2007) ("[T]he claims for breach of the implied covenant of good faith and fair dealing, and for fraud, should not be dismissed as duplicative of the breach-of-contract cause of action at this juncture.").

For these reasons, Defendants' motion to dismiss the good faith and fair dealing claim will be denied.

## CONCLUSION

For the reasons set forth above, Judge Freeman's R&R (Dkt. No. 29) is adopted in its entirety. Defendants' motion to dismiss (Dkt. No. 7) is denied.

Dated: New York, New York
       September 8, 2020

SO ORDERED.

_/s/ Paul G. Gardephe_____
Paul G. Gardephe
United States District Judge